UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60241-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

v.

MICHAEL SHILLINGFORD,

Defendant.
_____/



## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from U.S. District Judge Daniel T.K. Hurley. Defendant's Motion to Suppress is before the Court (DE 26). The Government responded (DE 30), the Court held an evidentiary hearing, and the matter is ripe for review.

## BACKGROUND

Defendant is charged by indictment with access device fraud, identity theft, being a felon in possession of a firearm and possessing a short barreled rifle. (DE 10). The indictment is founded on evidence seized during a warrantless search of a townhouse. Defendant now moves the Court to suppress this evidence (DE 26), and the question before this Court is whether the warrantless search complied with the Fourth Amendment of the U.S. Constitution.

## PARTY CONTENTIONS

Defendant's Motion to Suppress

In his motion to suppress, Defendant asserts the following:

On September 8th, 2011 Broward County Sheriff Detective Miller, Detective Penoyer, and Sgt. Barerez descended on a townhouse residence located at 3922 SW 52nd

1

Avenue in Pembroke Park/West Park, Florida. According to police reports, these officers were investigating possible residential and conveyance burglaries in the area. At approximately 11:30 am, they encountered Woody Telefort seated in the passenger seat of an automobile lawfully parked in front of the residence. Police allegedly smelled the odor of cannabis emanating from the stationary vehicle. Police ordered Mr. Telefort out of the vehicle, arrested him, and searched the vehicle finding cannbis in a closed mail parcel located in the back seat area. Police observed the front door of the residence to be ajar. Officers apporached the front door and saw Mr. Shillingford inside the home. Police then entered the home without the consent of Mr. Shillingford or a search warrant, alleging they saw cannabis in plain view on the desk adjacent to the front door. Upon entering the townhouse police found an AR-15 short barreled rifle, credit cards, marijuana ashes on the kitchen counter, documents containing names, social security numbers and dates of birth, and Green Dot Visa Debit Cards.

Defendant argues that law enforcement had neither the probable cause nor exigent circumstances necessary to search the townhouse without a warrant.

As to probable cause, Defendant attacks both bases for probable cause asserted in the incident report. First, Defendant argues that the only photographs from the scene show that marijuana cannot be seen from the front door, which is contrary to the information in the incident report. Second, Defendant argues that the facts provided to establish probable cause that a burglary was in progress are insufficient. Defendant concludes that to accept those facts as adequate – that it was between 8 a.m. and 2 p.m., there was a person sitting in a vehicle in front of the residence and the residence had its front door open – "would essentially grant police permission to enter and search any person's home simply because they have decided to leave the door open for a moment." (P. 5)

As to exigent circumstances, Defendant gives four reasons why the police had none. First, Defendant argues there was no danger of flight or escape because the three officers at the scene could have surrounded the house rather than enter it. Second, Defendant argues there was no danger of harm to the officers or the public because the car's passenger offered no resistance and was not

armed. Third, Defendant argues that there was no danger of evidence being lost or destroyed because there was no evidence seen from the door. Fourth, Defendant argues that there was no "hot pursuit" of a fleeing suspect because there was no probable cause to believe Defendant had committed a crime.

Government's Response

In its response, the Government argues that both probable cause and exigent circumstances existed to justify the officers warantless search of the townhouse. The Government asserts that as Detective Penoyer and Sergeant Barerez approached the open front door they observed marijuana in plain view. This observation, the Government argues, creates probable cause that the Defendant had committed, was committing or was about to commit an offense from within the residence. Exigent circumstances arose when the Defendant, located inside his residence, fled from the officers when he made eye contact with them.

## EVIDENTIARY HEARING

Detective Penoyer

At the hearing, Broward County Sheriff's Detective Penoyer testified. On September 8, 2011, Detective Penoyer, Detective Miller and Sergeant Barerez were patrolling West Park and Pembroke Park, Florida in an unmarked police car. As they neared 3922 SW 52nd Avenue, in West Park, Florida, they observed a black Mercedes parked in front of a townhouse with an open front door. An individual was sitting in the passenger seat of the car with the door open. Detective Miller parked beside the Mercedes. When he opened his door, Detective Miller immediately said "I smell weed." He then got out of the car and walked around the back of the Mercedes. Detective Penoyer and Sergeant Barerez got out of the car at the same time and walked toward the townhouse's wide

open front door. Detective Penoyer testified that she also smelled marijuana when she got out of the car. When Detective Penoyer reaches the front door, she can smell a strong odor of marijuana coming from within the townhouse. Detective Penoyer testified that, from the doorway, she had an unobstructed view to the back of the townhouse, which she estimates to be approximately 30 to 40 feet away. She saw a desk with a tray of marijuana on it immediately to the left of the door, and an individual, later identified as Defendant, at the back of the townhouse near the kitchen.

After seeing Defendant, Detective Penoyer told him to stop. Defendant saw the officers and ran deeper into the residence, quickly moving out of view. Detective Penoyer immediately heard loud noises coming from the room Defendant went into. At that point, she and Sergeant Barerez entered the residence with their guns drawn. As they approach the kitchen, Detective Penoyer saw Defendant's chest as he hid in the closet. The officers told him to get out of the closet and lie down on the floor. They secured him and continued to search the residence. During that search, Detective Penoyer found a loaded short-barreled AR-15 rifle in a nearby closet. The closet door was open.

While exiting the townhouse, Detective Penoyer saw spiral-bound notebooks filled with numerous social security numbers, names and dates of birth and credit cards strewn across the desk and floor. Detective Penoyer testified that, as these documents were similar to what is typically found in fraud cases, she called the U.S. Secret Service.

Defendant

Defendant also testified at the hearing. He testified that he was the individual arrested on September 8, 2011, and that he had spent the night in the townhouse. On cross-examination, Defendant elaborated that he does not own or rent the townhouse, although he did have keys to the residence and keeps some of his "stuff" there. He further testified that he stays at the townhouse

when he is not staying with his girlfriend.

On the day in question, Defendant was in the kitchen when he heard what sounded like someone going over the front door's metal threshold. He looked around the kitchen wall and saw a female coming into the unit with a gun drawn. At the time, he did not know the woman was a police officer. She was dressed in all black and didn't say anything to him. Seeing this woman, Defendant ducked back into the kitchen and hid in the kitchen closet.

Defendant testified that when the police entered the kitchen there was a tray with marijuana on it by the kitchen sink. Contrary to the testimony of Detective Penoyer, Defendant testified that he was certain that the tray of marijuana was not on the desk when the police entered the home. Defendant further testified that he knew where the tray was because he had smoked marijuana on the morning law enforcement arrived.

## DISCUSSION

### The Law

The Fourth Amendment's protection against unreasonable search and seizures is at its strongest within a home. U.S. v. Martinez-Fuerte, 428 US 543, 561 (1976). Indeed, "it is a basic principle of Fourth Amendment Law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 US 573, 586 (1980). To reasonably search a house without a warrant, law enforcement needs both probable cause and exigent circumstances. U.S. v. Santa, 236 F.3d 662, 668 (11th Cir. 2000). Probable cause is satisfied when "facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe that . . . the suspect had commited, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435(11th Cir.

1998). Exigent circumstances arise when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." U.S. v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). Circumstances recognized as exigent are those where there is a "danger of flight or escape, danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect." U.S. v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983).

As The Crow Flies

After the testimony, the Court finds that even if Defendant's account as to the marijuana's location is taken as true, the police had both the probable cause and exigent circumstances necessary to enter the residence in question. Once inside the residence, the police were entitled to undertake a protective sweep, Maryland v. Buie, 494 U.S. 325 (1990), and entitled to notice those items that are in plain view. Horton v. California, 496 U.S. 128, 136-37 (1990).

The shortest route to this conclusion is as follows. Law enforcement needed no justification to pull into the parking spot in front of the townhouse and adjacent to the parked Mercedes. California v. Ciraolo, 476 U.S. 207, 213 (1986). Law enforcement officers needed no justification to approach the townhouse. U.S. v. Hersh, 464 F.2d 228, 230 (9th Cir. 1972)(noting it is not "a condemned invasion of the person's right of privacy, for anyone openly and peaceably, . . . to walk up the steps and knock on the front door of any man's 'castle'"). At the open door, Detective Penoyer smelled marijuana coming from within the house. Detective Penoyer's testimony that she smelled marijuana is credible. In fact, Defendant testified that he had smoked marijuana earlier that day. The smell of marijuana is probable cause to believe a crime is being committed. U.S. v. Humphries, 372 F.3d 653, 658 (4th Cir.2004)("[T]he odor of marijuana alone can provide probable

cause to believe that marijuana is present in a particular place."); U.S. v. Gorthy, 550 F.2d 1051, 1052 (5th Cir. 1977)(same).

Exigent circumstances also existed. Detective Penoyer testifies that she saw Defendant from the doorway, and that he ran into the kitchen. The Court does not credit Defendant's attempts to refute this testimony based on the short distance to the kitchen. Defendant testifies that he heard someone at the door, looked around the kitchen wall, saw the officers – unknown to be officers, and ducked back into the kitchen to hide in the closet. Whether he was running into the kitchen or ducking back into the kitchen to hide, Defendant, after observing and being observed by law enforcement, moved quickly out of view. The reasonable conclusion by Detective Penoyer was that Defendant was fleeing, destroying evidence or getting a weapon. This suffices to create exigent circumstances. Blasco, 702 F.2d at 1325. As such, irrespective of the marijuana's location, both the probable cause and exigent circumstances necessary to enter a house without a warrant were present.

Marijuana in Plain View

To give full service to the parties' efforts, however, the Court also finds that marijuana was in plain view at the desk's edge, which gives an additional, independent basis for probable cause. This finding is made over a factual dispute based on a pair of fissures.

Competing Pictures

The factual dispute as to the marijuana's location seems to arise, at least in part, because there are two sets of pictures of the desk. In both sets of pictures the desk and the edge of it are plainly observable from the doorstop. However, in one set of pictures (Deft. Ex. 43 & 45), there is no tray on the desk. In another set (Govt. Ex.s 1, 2 & 6), a tray of marijuana is clearly visible on the desk top.

7

When the Defendant filed his motion to suppress, the Government had only produced the first set of pictures, (Deft. Ex.s 43 &45) which testimony indicates were taken by Secret Service. Ten days after Defendant filed his motion, the Government produced the second set of pictures (Govt. Ex. 1,2 & 6), taken by the Broward County Sheriff officers. (DE 29). Detective Penoyer's testimony clearly establishes that this second set of pictures were taken before the Secret Service pictures and before anything had been moved. Her testimony also indicates that the Broward County Sheriff's Office seized the marijuana before the Secret Service took its set of pictures. Accordingly, the Court finds that the photographs taken by the Sheriff's Office are the best indicator of the position of the marijuana when the officers approached the house.

Conflicting Testimony

The second factual schism as to the marijuana's placement arises from Defendant and Detective Penoyer's conflicting testimony. Detective Penoyer testified that when she approached the open door of the townhouse she could see the marijuana tray at the edge of the desk. Defendant, on the other hand, testified that the tray was by the kitchen sink when the detectives entered the townhouse. The Court finds Detective Penoyer credible and the Defendant incredible.

Detective Penoyer's testimony was clear, straight forward and did not waver. When she was questioned about the tray's placement during cross examination, she testified that it was approximately five feet from the door's threshold. Defendant's testimony, on the other hand, vacilated. Initially, he testified that to his recollection the tray did not have marijuana on it. He later testified that he knew the tray had marijuana on it, because he had smoked marijuana earlier that day. Further, Defendant's assertions with regard to the various papers found around the townhouse are unbelievable and cast doubt on his reliability. He testified that he stayed at the townhouse often

8

enough that he stored his things there and had a key to it. But, despite all of this, he never looked at the papers strewn around the townhouse to know what was in them.

The existence of the marijuana, plainly visible from the threshold of an open door creates probable cause to believe that a crime is being committed. And, again, exigent circumstances arose when Defendant moved out of Detective Penoyer's view after making eye contact with her. As such the Court finds that Detective Penoyer had both the probable cause and the exigent circumstances to search the townhouse without a warrant.

## RECOMMENDATION

Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Suppress (DE 26) be DENIED because probable cause and exigent circumstances existed to justify the warrantless search of the townhouse.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable U.S. District Judge Daniel T. K. Hurley, within 14 days after being served with a copy. 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. U.S. v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 19 day of December, 2011.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE